Good morning, Your Honor. May it please the Court, Counsel for the Government, Sunny Koh on behalf of the appellant, Mr. Pimentel-Quiroz. The first issue I would like to address is whether the District Court abused its discretion when it refused to give a limiting instruction after the Court ruled that defendant's seven prior drug trafficking convictions would be admissible to impeach his testimony if the defendant elected to testify under Evidence Rule 609 and after the parties stipulated that the defendant had a conviction punishable by imprisonment exceeding one year. Counsel, I tend to agree that the District Court probably should have given that instruction, but we are required to review any such error for harmlessness. So in view of his other testimony, why is there harmful error, if you will, in error that is not harmless? Your Honor, this error was not harmless because the jury had to believe whether or not the defendant was telling the truth when he stated that there was another Hispanic male who was in the vehicle, who exited the vehicle in the parking lot with the victim. Right, except that he also admitted under oath, as well as to his girlfriend or fiancée or whoever she was, that he was the guy who possessed the weapon. Plus the other crimes were of such a different type that they wouldn't normally tell you that, well, gee, if he was willing to do that kind of crime, he must have done this one also. But in view of his admissions, I don't understand how this was harmful to him. Your Honor, his admission that the government brought forth through the jail recording, it was brought out during trial that there was a reasonable explanation. It was not a confession, as the government put it. In the jail recording, if you look at the specifics of what was discussed when the defendant told his girlfriend that they found the effing gun, his girlfriend asked if it was both guns or just one. Right, so he was lucky he was prosecuted only for one and not two. But I guess I still haven't heard an answer to the question of why in view of all the other evidence, including his sworn statement at the other hearing, and I know you argue about whether that's admissible, but for now I want you to assume that it was admissible. In view of all that, how could the absence of a limiting instruction have made any difference whatsoever in the outcome? The jail recording, as well as Mr. Pimentel-Quiroz's statement about the gun during his probation violation hearing, those statements were absolutely, in my opinion, arguable that it was not admissible. And I believe that Mr. Pimentel-Quiroz's statement was not a confession that he had possessed this gun. If those statements that he made could be explained, and it was explained during the trial how he was confused during the probation hearing, confusing specifically because he denied that he had constructively possessed the firearm, but mistakenly stated that he did possess a stolen gun. So, breaking down his statements, it was reasonable for the jury to conclude that those statements, in the context in which it was stated, were confusing and were not equated to a confession that he had the weapon at the time of the incident. What the case come down to was whether the jury was able to determine whether Mr. Pimentel-Quiroz was guilty or not. When they're assessing the credibility and the believability of this defendant, who elected to testify, who wanted to give his story about why the vehicle pulled into the parking lot and how this other Hispanic male who had wielded the gun had left without being observed or noticed, when he chose to take that stand, he had to decide whether that he was doing so despite the fact that the jury was going to hear that he had seven prior drug trafficking convictions. I can't imagine anything more prejudicial than the jury sitting there, listening to this person giving his story about what occurred that night, and when he comes down to deciding, are they going to believe this defendant? Or are they going to believe a completely disinterested third-party witness who saw it all? Yes. And what I view, I know you don't, but what I view as confessions, both formal and informal. I guess, just speaking for myself, I have difficulty seeing the prejudice to your client. Your Honor, and again, there was ample testimony throughout during cross-examination of this disinterested third-party witness that he, in fact, could not have observed what he said he observed. He could not have kept his eyes on the vehicle the entire time because the defense witness, the private investigator, testified that it was New Year's Eve, the parking lot was full, that from the position of where this third-party person stood, Mr. Brown, that he could not have seen anyone entering or exiting the vehicle. Furthermore, the witness gave testimony that he could not have stayed at that parking lot the entire time, as he stated on direct. This was all brought out during cross-examination. The gunshot from the driver's side of the vehicle, that too, under cross-examination, the witness had to admit that he did not observe that in his handwritten statement, as well as his statement during cross, was an admission that he had only heard the gunshots and nothing more. The passenger window being closed, as the government points out as definitive evidence that it was the defendant who fired the gunshot, that too was in error because under cross-examination, the witness likewise had to admit that he had no memory of this until six and a half months later. And a prior testimony from the witness stated that the passenger window, in fact, was down when he observed this Hispanic male reaching inside the passenger window to retrieve the handgun. As I stated before, his guilty plea, as Your Honor so puts it, it was not a confession because he was confused. If you look at the colloquy of what was stated, he said he was in possession of a stolen gun, but when he's asked, well, are you saying you possess the gun? And he says, are we talking about the gun? And he says, no, I'm not guilty of that. There was absolutely confusion, and the jury could discount what he stated during his probation violation hearing. And likewise, the jail call was explainable. Counsel, it appears to me that you're kind of redoing your jury argument, and when we're reviewing the facts here and considering the facts, we have to look at them in the light most favorable to the government because there was a conviction. And I just would like to make that observation to you. And I did have one other question for you. Would you address the issue of the prosecutor's closing argument, please? Yes, Your Honor. On the issue of the prosecutor's closing argument, I agree that there are a litany of cases not only in this district, but in other districts, that there's a distinction between commenting on the defense counsel's arguments or tactics, commenting on the strength of the defense, commenting on the defendant himself calling the defendant as someone who had lied. There's a distinction between those types of arguments that governments can make and were found to be proper and arguments that are directed specifically to counsel. In this case, the statement was, frankly, I would submit to you, and this is the government telling the jury that in his opinion, in his belief, the defense counsel perpetrated a fraud. He told the jury, it started an opening statement, opening statement that people routinely say is when you win or lose the case. It started an opening statement when this co, he named counsel by name. This wasn't an attack on the defendant. This was not an attack on the defense's strength of the case. It was specifically to defense counsel. It started an opening statement when this co promised you the moon about what you were going to hear, witnesses that going to cooperate the defendant's version of events. Where are they? Well, counsel, in view of the fact that your client was acquitted of one of the charges and as well as the strength of the evidence, what can you point to to demonstrate that this misconduct had any effect on the jury's verdict? I mean, if they totally thought that everything was a sham, they would have convicted of everything, presumably, but they didn't. Your Honor, on the second count, the possession of ammunition, the ammunition that was used that, the bullets that were found inside the vehicle, there was ample testimony that the bullets could not have been where the police said they were. I recognize that there may be good reasons, many good reasons why there was a reasonable doubt on your client was acquitted. My point is simply that apparently the jury was willing to look at the evidence and not think about whether they thought counsel was doing something bad or not. Doesn't that show that the jury did its job conscientiously without bias? I do agree with your Honor that the jury was conscientious and did look at the evidence thoroughly. I do believe, however, that when it came down to what they were going to believe, who they were going to believe, are they going to believe this third person who called 911, or are they going to believe the story of a convicted felon who had seven prior drug trafficking convictions when they were told not at all how they were supposed to use that evidence, for what purpose it was being introduced. They were not told that it was only for impeachment purposes. And that is why this case is so different than the Old Chief case that the state, that the government has cited. In Old Chief, the limiting instruction was inappropriate and it was erroneous because the defendant never testified. It was erroneous to give that instruction when there was no testimony to impeach. And the stipulation in Old Chief was not like the stipulation that the defense submitted and both parties submitted. The stipulation was clear that by law, Mr. Pimentel-Quiroz was guilty of having a conviction where the punishment exceeded one year. Counsel, did you want to save any rebuttal time? I will save one minute, Your Honor, for rebuttal. Thank you. We'll hear from the government. May it please the Court, Teal Luthy Miller on behalf of the United States. I'll start with the limiting instruction and then move to the allegations of misconduct. As the Court's this morning suggests, there was no harmless error in the instruction for a couple of reasons. There was no harmless error? Excuse me. There was any error here. Excuse me. I'm sorry. Any error here was harmless because of the concessions the Court has pointed to, but also for a couple of other reasons. The testimony that Mr. Quiroz gave was the fourth version of events that he'd offered about what happened that night. And Mr. Brown, the 911 caller's testimony, made clear that the gunshot was fired after the car had turned around in the parking lot, which is where Mr. Quiroz says the third party, the other Hispanic male, got out of the car. And Mr. Brown, or excuse me, Mr. Quiroz's testimony makes clear that his testimony is that Ms. Green fired the gun out of the passenger window, not out of the driver's side window. Now, my opposing counsel has said that there was shifting testimony as to whether the passenger's about one thing. He did not see any gunshot come out of the passenger's side window and he was eight feet away and on that side of the car. It was, he was walking up the sidewalk. It was driving along the sidewalk, basically parallel to him, going slowly. He heard the gunshot. He did not see it, which is why he said the driver had fired the gun. Now, if I may, I'd like to explain why I think that the limiting instruction, rejecting the limiting instruction, was not error here. And that is that it was an element of the offense. It was not error or it was harmless error? It was, I just explained why I thought, I'm sorry, I'm sort of doing this backwards, why I thought if you think it's error, it wasn't harmless. Now, I'd like to make a short argument as to why it wasn't even error. Well, didn't it, it seemed to me that the court was perhaps laboring under a misapprehension and not fully recalling that there had been a stipulation. And isn't, wasn't the court's reasoning at least wrong in that regard? Well, Your Honor, there had been a stipulation, but then defendant went ahead and introduced the evidence on his direct. That's what I wanted to ask. So there had been a stipulation at the beginning of trial, before trial started? I mean, when was the stipulation entered into? The stipulation was read to the jury at the close of the government's case. Which said that the defendant stipulates that he's a felon? Yes. Period. Yes. But that element of the offense is satisfied. Okay. And so then the defense decides, or defense counsel and defendant decide he should testify. Yes. He testifies. Yes. And the defense attorney brings out exactly what regarding his prior convictions? That he has multiple prior convictions for drugs. I don't believe that she elicits what kind of drugs. But she, she brings it out in order to say, and in none of those offenses did you have a gun? Were you charged with having a gun? So it was a strategic decision to introduce this evidence on her part to try and make it seem less likely that he had a gun, or perhaps. Did they say the type of drug? No. Okay. So, and then what happened? And then on cross-examination, the prosecutor went through what the actual offenses were, which were heroin offenses. So the type of drug was mentioned on cross-examination. But he introduced the evidence himself. And the limiting instruction he asked for would, under the authority of old chief, would have been inaccurate. I think it is possible to imagine a limiting instruction which would have asked the jury to consider that element satisfied based on the stipulation and the evidence about prior crimes only admissible as to credibility. Counsel did not ask for that instruction. She also did not argue that such an instruction would have been preferable on appeal. So she's forfeited that argument on appeal. But she offered a limiting instruction. She did offer a limiting instruction, which was incorrect. Because although there was a stipulation, to tell the jury you may not consider this evidence might have confused it, which is what the Court said. Wait a minute. We have a stipulation saying this element is satisfied, but we're told we can't consider this evidence that it's satisfied. That's what the Court was saying. And so what's the instruction that should have been given then? Well, Your Honor, she didn't ask for a different instruction. The instruction I could imagine she might have asked for and which the district court in its discretion might have given would have been something like, as to whether that element is satisfied, it is because there's a stipulation. To the extent there's also evidence of it in addition to the stipulation, you may only consider that as to his credibility. The district court did give an instruction to the jury that Mr. Kudos was not on trial for any conduct or offense not charged in the indictment. Which goes a little ways towards the instructions she asked for. But again, I think ultimately, if this Court prefers to resolve this on the question of harmlessness, for all the reasons you suggested in your question, there was no harmful error. I would appreciate your turning to the question of the government's final argument. And again, speaking only for myself, I found it extremely troublesome and troubling because it appears to me to be a personal attack on defense counsel rather than on the case. And in very strong language, a personal attack on defense counsel. Your Honor, the prosecutor struck hard blows in the rebuttal summation. He may have chosen some phrases that could have been better chosen. But defense counsel this morning, and in her briefing, actually, I think, misstates a little bit what the prosecutor said. Well, what the prosecutor said is, frankly, I would submit to you that they, meaning the defense, perpetrated a fraud. It started in opening statement when Ms. Ko promised you the moon about a variety of things. And she doesn't bring this up because it didn't happen. And then goes on, the attempt to perpetrate a fraud continued in closing argument. Over and over, Ms. Ko took things out of context and she misstated what the witnesses said. And it just seems like a very, very personal attack rather than an attack on the evidence or the presentation of evidence. I believe it's fair to say it was an attack on the evidence. You're right that the prosecutor used Ms. Ko's names, but misnamed twice. But when he said the defense perpetrated a fraud, he was talking about the whole defense, not just the prosecutor. She said this morning that he said defense counsel perpetrated a fraud. He never said that, and that's an important distinction. Now, he did say she promised you the moon about what you're going to hear in opening statement. But he went on to give specific examples of people she said would testify, or what the people who did testify would say, that turned out not to be at trial. And it is fair, this court said in Tucker quite recently, that saying that opposing counsel's opening statement was, quote, misleading. As to specific evidence, in that case it was about fingerprint evidence, is acceptable argument because it's tied to the evidence in the case. And here, what the prosecutor was saying was, Ms. Ko said, Ms. Green was going to testify that she shot the gun, she never did. And that an individual named James Olsen was going to testify that, and could corroborate Kuros' story about being in Bumpy's bar and being outside of the bar. And it not being Mr. Kuros with a gun, and Mr. Olsen never testified. And then on page 49 of our brief, the second paragraph that you pointed to, the attempt to perpetrate a fraud, which had been tied to the defense. If you look at page 48 of our brief, the defense perpetrated a fraud, not defense counsel. The attempt continued. Then there's a long paragraph where the prosecutor explains that what counsel says in argument is not evidence. And then he says, over and over again, Ms. Ko took things out of context and misstated the record. That's a hard thing to say, I acknowledge that. If you want to decide this case on plain error, as you've acknowledged, it might be easier. But it is an acceptable thing to say, because he went on and tied it to the evidence. He said, here are two things she said in her closing that don't reflect the evidence. And he pointed to, she said Mr. Brown said it was hard to see that night. In fact, he testified there was a big bright light over the scene he was looking at, but it was hard for him to see the license plate. So she took his statement about the license plate out of context. And I appreciate what you're pointing out. I mean, there's certain parts of these that have been dissected. Certainly, the prosecutor could have said those statements and highlighting what some of the discrepancies were in terms of the evidence. But to say that they perpetrated a fraud, that seems over the line. And I'm just curious, and I know you're doing your best here, but is that what the folks in the US Attorney's Office and the Western District of Washington are taught? Because I'd like to hear a statement of some sorts acknowledging that, yes, this is not appropriate. Your Honor, as I said, no one would have advised someone to give in our office, or I hope in any office, in any United States Attorney's Office, that this was an ideal closing rebuttal. Ideal? Or even close to it. I acknowledge that it came close to the line. And if you'd like me to describe why I think it wasn't plain error and decide the case on that basis, I'd be happy to do that. I do think it's worth defending the statements because I think there are some decisions of this court which recognize that these kind of statements, as long as they're tied to the evidence, are okay. In Williams against Boer, the prosecutor called the defendant's arguments trash. I think that's just as harsh as a fraud. As I said, in Tucker, the prosecutor said that the opening statement was misleading. I think misleading and fraud are largely synonymous. Yes, but there's a difference between talking about the statement being misleading in an individual trying to perpetrate a fraud. I mean, maybe that's a subtle difference, but it seems like a real difference to me. Absolutely, Your Honor. And again, the prosecutor never said that defense counsel perpetrated a fraud. He said the defense did. And the defense- Isn't that a comment on the character of either the defendant or counsel or both? It is a comment on the character. Well, I mean, isn't it different to say the evidence, the description of the evidence that you've just heard is not the way I see how the evidence really came in, because here's what the evidence really was, okay? That's all about the evidence. This seems to be all about the character of the defense team, the defendant and his lawyer. Well, it is clear from this court's decisions that it's okay to say that the other side's story isn't true. Ruiz says this. If the case comes down to one side's story being true or the other, it's okay for the prosecutor to say it's not true. Well, sure it is, but wouldn't it sound to lay people like if somebody commits a fraud that they committed another crime? Well, Your Honor, as lawyers, we might think of fraud as a crime, but I think it's more synonymous to misleading a lie in this context. Well, I think as lawyers, we would just hear it as hyperbole or overzealousness, but a layperson where a lawyer or the defense team committed a fraud, that's a crime, isn't it? Fraud does have a technical meaning as a crime. I don't think the prosecutor's statement can be meant to suggest that she was actually engaged in the crime of fraud. I obviously haven't convinced you of this, and again, we do recognize that these were statements that were close to the line. Let me discuss why it wasn't plain error. It wasn't obvious, as I've said, but even if you disagree with that, meaning it wasn't plain, it didn't affect the defendant's substantial rights because the evidence of his guilt was so compelling. As the court has pointed out, we have the informal and the formal confession. We also have the story about Daniel being the person walking around outside the car with a gun being the fourth story that he offered in his defense. But even if you accept the story about Daniel, he's still guilty because there's no question that he was the individual driving the car when the gun was shot out of the window of the car. Mr. Brown, the 911 caller, said the shot came from the driver on the 911 tape.  Quiroz was arrested about 20 seconds, meaning the car was stopped about 20 seconds after the gun fired, if you listen to the 911 tape. Quiroz claimed that Green shot the gun out of her window. Even his testimony makes it clear it came out of her window. Or his testimony makes it clear that it came out of her window. Mr. Brown's testimony makes clear that that's not true. He didn't see the gun flash. He was eight feet away. He asked, was I shooting, right after he was Mirandized in the hospital, which is a third confession he made, or a third acknowledgement that he had a gun. Because if you didn't even have a gun, you'd say, did I have a gun? Not, was I shooting? And there's also the voice saying, there's one pistol in the car on the dashboard camera that records the events after the eight and a half minutes after his car was stopped before he got out. And then him, after he was tased, to end the arrest. If the court has no further questions. I don't believe that we do. Thank you. Thank you, Your Honor. Ms. Ko, you have about a minute and 27 seconds. If the government has stated that Defense Counsel failed to produce witness, that could be arguably not improper. If counsel just stated Defense Counsel took things out of context, that could also be deemed permissible under the case law. If government said that Defense Counsel misstated what the witnesses said, that also could be arguably not improper. What distinguishes what was said in this case and all the other line of cases that both parties cited is the government standing up there and saying, counsel perpetrated fraud. Perpetrated, meaning she did something. And what she did was a crime, a fraud. And she did it in opening statement, and she did it in closing argument. Do you agree that we review for plain error? Yes. Yes, I do agree with that, Your Honor. And my argument is that this rose to the level of plain error because it was flagrant. It was flagrant because it was repeated. It was directed. It was a personal attack. It wasn't accidental. It wasn't an offhanded remark in the heat of the moment. It was a calculated remark to undermine everything counsel said during her closing argument and in opening statement. To tell a jury, a representative of the United States government, saying that defense counsel perpetrated a crime that rose to the level of flagrant misconduct. Thank you, counsel. The case just argued is submitted.
judges: Bury, Graber, Murguia